NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

AUSTIN RANCH UTILITIES COMPANY; AUSTIN RANCH LLC; and
COURTLAND CAPITAL, LLC, *Plaintiffs/Appellants*,

*v.*

WEST SURPRISE LANDOWNERS GROUP, LLC; TAYLOR MORRISON
ARIZONA, INC. fka TAYLOR WOODROW/ARIZONA, INC.;
MANAGEMENT 317 LLC; SURPRISE FOOTHILLS MASTER LLC;
CENTEX HOMES; SS ASSEMBLAGE LLC; FRI SURPRISE 398 LLC and
FRI SURPRISE ASSEMBLAGE, LLC, *Defendants/Appellees*.

No. 1 CA-CV 13-0585
FILED 09-25-2014

Appeal from the Superior Court in Maricopa County
CV2011-005485
The Honorable Arthur T. Anderson, Judge

**AFFIRMED**

COUNSEL

Osborn Maledon PA, Phoenix
By William J. Maledon, Maureen Beyers, Chelsea Sage Gaberdiel
*Counsel for Plaintiffs/Appellants*

Perkins Coie LLP, Phoenix
By Joseph E. Mais, Joel W. Nomkin, Colin P. Ahler
*Counsel for Defendants/Appellees West Surprise Landowners Group LLC, Taylor Morrison Arizona Inc., and Surprise Foothills Master LLC, and*
*Co-Counsel for Defendant/Appellee Management 317 LLC*

Moyes Sellers & Hendricks, Phoenix
By Keith L. Hendricks
*Co-Counsel for Defendant/Appellee Management 317 LLC*

Fennemore Craig PC, Phoenix
By Kevin J. Bonner
*Counsel for Defendant/Appellee Centex Homes*

Poli & Ball PLC, Phoenix
By Michael N. Poli, Jeffrey G. Zane
*Counsel for Defendant/Appellee SS Assemblage LLC*

Rader Lucero PLLC, Phoenix
By Richard J. Trujillo
*Counsel for Defendants/Appellees FRI Surprise 398 LLC and FRI Surprise Assemblage LLC*

---

**MEMORANDUM DECISION**

---

Presiding Judge Patricia A. Orozco delivered the decision of the Court, in which Judge Randall M. Howe and Judge Maurice Portley joined.

---

**O R O Z C O**, Judge:

¶1        Austin Ranch Utilities Company, Austin Ranch, LLC, and Courtland Capital LLC (collectively Austin Ranch) appeal from an order dismissing with prejudice Count 4 of Austin Ranch's first amended complaint and awarding attorney fees and costs in favor of West Surprise Landowners Group LLC (West Surprise), Centex Homes, SS Assemblage LLC, Management 317 LLC, Surprise Foothills Master LLC, FRI Surprise 398 LLC, and FRI Surprise Assemblage LLC (collectively Appellees). Because Austin Ranch cannot establish that Appellees lacked probable cause for initiating the underlying action, we affirm the dismissal of Count 4 and the award of attorney fees and costs.

**FACTS AND PROCEDURAL HISTORY**

¶2	This appeal arises from a dispute between the parties surrounding the construction of a wastewater treatment facility (the Plant) in the City of Surprise. Six landowners and home developers (Owners) entered into a joint development agreement (JDA) to build the Plant in late 2005. In accordance with the JDA, the Owners appointed Austin Ranch Utilities Company as the coordinator of the project (the Coordinator) to oversee and direct the Plant's construction.

¶3	After the construction's design phase ended, the Coordinator evaluated the housing market's declining economic conditions and concluded that immediately constructing the Plant would be imprudent. Accordingly, the Coordinator wrote the Owners requesting their development plans before giving the construction company "notice to proceed with sewer improvements." The Coordinator later told the Owners that "current market conditions and other factors" had caused a majority of the Owners to delay the development and construction of their respective projects. The Coordinator also informed the Owners that the Plant construction company would not receive a notice to proceed with construction (Notice to Proceed).

¶4	West Surprise disagreed with the Coordinator's decision and urged the Coordinator to promptly issue a Notice to Proceed, arguing that no individual Owner had the "right to unilaterally terminate" the JDA and that terminating the JDA required a mutual and unanimous decision by the Owners. West Surprise also pointed to the JDA, which provided that by accepting the JDA's terms, each Owner "waives any right to affect, impair or delay construction of any of [the Plant], to endeavor to stop work thereon, to endeavor to obtain an injunction or stop order or any similar matter." The JDA also stated that each owner,

> [A]cknowledges that to stop work would cause great harm to all other Owners which is not necessarily susceptible to answer in damages, and therefore waives any such right to stop work. Each Owner shall have the immediate right to injunctive relief against any Owner which endeavors to stop work hereunder."

¶5	West Surprise filed an arbitration demand (First Arbitration) in January 2007, alleging that the Coordinator violated the JDA by not issuing a Notice to Proceed. Following an arbitration hearing, the arbitrator ruled in favor of West Surprise, requiring in part that: (1) the Coordinator

3

issue a Notice to Proceed with construction of the Plant within thirty days; (2) construction of the Plant commence "with all due haste;" (3) Austin Ranch complete the Plant's construction by August 29, 2008, and bear all additional construction costs in excess of the $580,000 escrowed by the Owners; (4) Austin Ranch reimburse West Surprise for its attorney fees and all arbitration fees; and (5) appointing the arbitrator the sole decision maker for all future disputes arising under the JDA. Austin Ranch and the Coordinator complied with the Arbitration Award and the Plant was substantially completed by October 2008.

**¶6** During the Plant's construction, Austin Ranch filed an Application to Vacate the Arbitration Award in the trial court, which was granted in June 2008. In vacating the arbitration award, the trial court found that: (1) the arbitrator "ruled in advance on a host of issues that were not presented and were not part of the evidence;" (2) an "arbitrator may not settle on an interpretation of a contract that 'so directly contradicts the plain meaning of the parties' agreement that it effectively rewrites it;" and (3) the trial court's order "in no way constitutes a decision on the merits of any portion of the underlying dispute, much of which may have been correctly decided." This court affirmed the trial court's order of vacatur in *Austin Ranch, L.L.C. et al. v. West Surprise Landowners Group, L.L.C.*, 1 CA-CV 08-0837, 2010 WL 363830, at *1, ¶ 1 (Ariz. App. Feb. 2, 2010) (mem. decision).

**¶7** Austin Ranch commenced a second action in March 2010 to recover alleged damages sustained in the First Arbitration and to seek a declaratory judgment establishing the rights and obligations of the parties. After the trial court granted Austin Ranch's motion to compel arbitration as to West Surprise, the parties agreed to litigate the action before the trial court. Austin Ranch's first amended complaint asserted four claims: (1) declaratory judgment against West Surprise, (2) breach of contract against West Surprise, (3) unjust enrichment against West Surprise, and (4) bad faith prosecution of arbitration against all defendants (malicious prosecution claim or Count 4).

**¶8** Appellees moved to dismiss Count 4 under Arizona Rule of Civil Procedure (Rule) 12(b)(6), which the trial court granted. Judgment was entered solely on Count 4 with Rule 54(b) language. The trial court also awarded attorney fees under Arizona Revised Statutes (A.R.S.) section 12-341.01 (West 2014)[1] to West Surprise for $69,442, to Centex Homes for $67,320 and to SS Assemblage LLC for $3,376. Austin Ranch timely

---

[1] We cite the current version of applicable statutes when no revisions material to this decision have since occurred.

appealed, and we have jurisdiction under Article 6, Section 9, of the Arizona Constitution, and A.R.S. §§ 12-120.21.B (West 2014) and -2101.A.1 (West 2014).

## DISCUSSION

**¶9** We review de novo a complaint's dismissal under Rule 12(b)(6). *Coleman v. City of Mesa*, 230 Ariz. 352, 355, ¶ 7, 284 P.3d 863, 866 (2012). "Dismissal is appropriate under Rule 12(b)(6) only if 'as a matter of law [] plaintiffs would not be entitled to relief under any interpretation of the facts susceptible of proof.'" *Id.* at 356, ¶ 8, 284 P.3d at 867 (quoting *Fid. Sec. Life Ins. Co. v. State, Dep't of Ins.*, 191 Ariz. 222, 224, ¶ 4, 954 P.2d 580, 582 (1998)). Although matters outside the pleading may not be considered without converting a Rule 12(b)(6) motion to a summary judgment motion, a trial court may consider "[a] complaint's exhibits, or public records regarding matters referenced in a complaint" in ruling on a Rule 12(b)(6) motion. *Coleman*, 230 Ariz. at 356, ¶ 9, 284 P.3d at 867.

I.      The Elements of a Malicious Prosecution Claim[2]

**¶10** Austin Ranch contends its malicious prosecution claim is not based on West Surprise's claim that the JDA required immediate construction of the Plant; rather, they argue it is based on West Surprise's damages claim that Austin Ranch argues "had no basis in fact, was asserted for leverage purposes only, and was later abandoned by Defendants." We conclude, however, that damages—as well as injunctive relief—were remedies sought by West Surprise in its initial demand for arbitration (Initial Demand) contingent on Austin Ranch's liability for breach of contract. During the First Arbitration, the parties agreed that holding the damages hearing after the Plant's construction would allow for a more precise damages award. Therefore, the need for a damages hearing originated from Austin Ranch's initial possible breach of contract and

---

[2]      Austin Ranch initially argues that this court should recognize a cause of action for the malicious prosecution of an arbitration and that the trial court erred by dismissing their claim because it found no such cause of action recognized in Arizona. We need not decide if a party can bring a malicious prosecution lawsuit after an arbitration in Arizona because, under the facts in this case, we affirm the trial court's finding that West Surprise had probable cause to bring the arbitration, and, as a result, Austin Ranch cannot establish a malicious prosecution claim as a matter of law.

cannot be separated as a different proceeding for the purposes of a later malicious prosecution claim.

¶11 Establishing a cause of action for malicious prosecution of a civil proceeding requires a plaintiff to demonstrate that the defendant "(1) instituted a civil action which was (2) motivated by malice, (3) begun [or maintained] without probable cause, (4) terminated in plaintiff's favor and (5) damaged plaintiff." *Chalpin v. Snyder*, 220 Ariz. 413, 418–19, ¶ 20, 207 P.3d 666, 671–72 (App. 2008) (quoting *Bradshaw v. State Farm Mut. Auto. Ins. Co.*, 157 Ariz. 411, 416–17, 758 P.2d 1313, 1318–19 (1988)).  In this case, the trial court and the parties focused on whether probable cause existed for West Surprise's underlying damages claim and whether the underlying action terminated in Austin Ranch's favor.  Because the question of probable cause is dispositive, we need not reach the other elements.

II.     Probable Cause Existed for West Surprise's Underlying Damages Claim

¶12 "The failure to establish a lack of probable cause is a complete defense to an action for malicious prosecution." *Carroll v. Kalar*, 112 Ariz. 595, 596, 545 P.2d 411, 412 (1976).  Austin Ranch asserts that the trial court erred in holding that probable cause existed for West Surprise's underlying damages claim.

¶13 "Whether a given set of facts constitutes probable cause is always a question of law to be determined by the court." *Chalpin*, 220 Ariz. at 419, ¶ 20, 207 P.3d at 672 (quoting *Wolfinger v. Cheche*, 206 Ariz. 504, 509, ¶ 25, 80 P.3d 783, 788 (App. 2003); *see also Bradshaw*, 157 Ariz. at 419, 758 P.2d at 1321) ("If the operative facts are undisputed, the existence of probable cause is a question of law to be determined solely by the court.").  In a civil malicious prosecution action, the test for probable cause contains both a subjective and an objective component. *See id.* at 417, 758 P.2d at 1319.  "The initiator of the action must honestly *believe* in its possible merits; and, in light of the facts, that *belief must be objectively reasonable*." *Id.*  "[T]he test is whether the initiator reasonably believes that he has a good chance of establishing [his case] to the satisfaction of the court or the jury." *Id.* (citing Restatement (Second) of Torts § 120 at 893 (1977)) (internal quotation marks omitted).  Thus, the relevant questions are, at the time West Surprise filed the First Arbitration, (1) whether West Surprise believed an arbitrator might find its case meritorious and (2) whether that belief was reasonable. West Surprise "did not have to be certain it would prevail; rather, it only had to reasonably believe in the possibility that the [Arbitrator] would find

its claim valid." *See id.* at 418, 758 P.2d at 1320; *see also Smith*, 173 Ariz. at 294, 842 P.2d at 1307 ("A certainty of success is not required.").

¶14 We look first to the issue of objective probable cause before examining the parties' subjective beliefs. *See, e.g.*, *Chaplin*, 220 Ariz. at 419, ¶ 21, 207 P.3d at 672. If West Surprise does not, as a matter of law, have an objectively reasonable basis for the damages claim against Austin Ranch, then West Surprise is subject to Austin Ranch's malicious prosecution claim. *See Wolfinger*, 206 Ariz. at 513, ¶ 41, 80 P.3d at 792. A reasonable person test determines "[w]hether the facts in a particular case are sufficient to constitute probable cause." *Carroll*, 112 Ariz. at 596, 545 P.2d at 412. In making this objective determination, we ask "upon the appearances presented . . . would a reasonably prudent [person] have instituted or continued the proceeding?" *Wolfinger*, 206 Ariz. at 509, ¶ 28, 80 P.3d at 788 (internal alterations omitted).

¶15 In *Smith v. Lucia*, we adopted the standard used in Arizona and federal cases interpreting Arizona Rule of Civil Procedure (Rule) 11 to define this reasonable person test. 173 Ariz. at 297, 842 P.2d at 1310 ("Cases decided under Rule 11, Federal Rules of Civil Procedure, which is identical to Rule 11, Arizona Rules of Civil Procedure, are helpful in determining the standard by which we may measure the reasonableness of an attorney's conduct . . . . We conclude that the Rule 11 objective standard should apply here."). "Under Rule 11, an attorney violates the objective standard when: (1) there was no reasonable inquiry into the basis for a pleading or motion; (2) there was no chance of success under existing precedent; and (3) there was no reasonable argument to extend, modify, or reverse the controlling law." *Wolfinger*, 206 Ariz. at 510, ¶ 29, 80 P.3d at 789 (quoting *Smith*, 173 Ariz. at 297, 842 P.2d at 1310). We later clarified that the proper standard for the second prong of this test was not whether the initiator had "no chance" of success under existing precedent, but rather whether the initiator reasonably believed there was a "good chance" of success. *Chalpin*, 220 Ariz. at 421, ¶¶ 31–32, 207 P.3d at 674.

¶16 From this record, we conclude that West Surprise had objective probable cause to file its arbitration demand for breach of contract against Austin Ranch and seek damages. Whether Austin Ranch failed to perform its contractual obligations is a legitimate basis for a claim that, notwithstanding the vacated arbitration award, may still result in a finding that Austin Ranch materially breached the JDA. *See, e.g.*, *United Calif. Bank v. Prudential Ins. Co. of Am.*, 140 Ariz. 238, 278–79, 681 P.2d 390, 430–31 (App. 1983) ("a statement by a party to a contract that he will perform only in accordance with his own erroneous interpretation of that contract is a

repudiation."). Here, West Surprise's Initial Demand asserted that the JDA created obligations of the parties to the JDA to construct the Plant and that "time [was] of the essence in the performance of each and every obligation imposed in the JDA." Yet, the Coordinator delayed the development and construction of the Plant. Therefore, if Austin Ranch, the Coordinator, did not meet its obligations under the JDA, then West Surprise had a good chance of prevailing on its breach of contract claim.

¶17 Finally, the First Arbitration found Austin Ranch breached the JDA. An adjudication in favor of the party who initiated the prior action establishes probable cause as a matter of law, even if later vacated. *Visco v. First Nat'l Bank of Ariz.*, 3 Ariz. App. 504, 508, 415 P.2d 902, 906 (1966). Therefore, we conclude West Surprise had objective probable cause for filing its Initial Demand.

¶18 Because West Surprise possessed objective probable cause in initiating the suit against Austin Ranch, we need not address whether West Surprise had subjective probable cause. *See Wolfinger*, 206 Ariz. at 511, ¶34, 80 P.3d at 790. ("[T]he subjective component of a probable cause analysis in a [civil malicious prosecution] claim does not come into play unless the claim is not objectively reasonable."). The existence of probable cause is a complete defense to Austin Ranch's action for malicious prosecution, *see Carroll*, 112 Ariz. at 596, 545 P.2d at 412, and the trial court did not err by dismissing Count 4.

III.        Attorney Fees

¶19 The trial court awarded attorney fees and costs to Defendants as the prevailing parties under A.R.S. §§ 12-341 (West 2014) and -341.01. On appeal, Austin Ranch objects to this attorney fees award. Awarding attorney fees is within the sound discretion of the trial court. *Spector v. Spector*, 17 Ariz. App. 221, 230, 496 P.2d 864, 873 (1972). "We view the facts in the light most favorable to upholding the trial court's ruling." *Hammoudea v. Jada*, 222 Ariz. 570, 571, ¶ 2, 218 P.3d 1027, 1028 (App. 2009). We will not reverse such an award absent an abuse of discretion, and "[w]e will not disturb the trial court's discretionary award of fees if there is any reasonable basis for it." *Rudinsky v. Harris*, 231 Ariz. 95, 101, ¶ 27, 290 P.3d 1218, 1224 (App. 2012).

¶20 Austin Ranch first argues that the attorney fees award was inappropriate because a malicious prosecution claim does not arise out of contract for purposes of A.R.S. § 12-341.01. Although a contract that merely "puts the parties within tortious striking range" cannot convert tort claims

into contract claims, a tort claim may arise out of a contract "when the tort could not exist 'but for' the breach or avoidance of contract." *Ramsey Air Meds, L.L.C., v. Cutter Aviation, Inc.*, 198 Ariz. 10, 15–16, ¶ 27, 6 P.3d 315, 320–21 (App. 2000); *see also Sparks v. Republic Nat. Life Ins. Co.*, 132 Ariz. 529, 543, 647 P.2d 1127, 1141 (1982) ("The fact that the two legal theories are intertwined does not preclude recovery of attorney's fees under § 12-341.01(A) as long as the cause of action in tort could not exist but for the breach of the contract.").

¶21  While Austin Ranch's malicious prosecution claim sounds in tort, it would not have arisen but for the underlying breach of contract addressed in the First Arbitration. The First Arbitration solely focused on whether the JDA was breached. Because the malicious prosecution claim would not have existed but for the JDA and the First Arbitration's breach of contract claim, we affirm the attorney fees award in favor of West Surprise.

¶22  Austin Ranch next challenges the attorney fees and costs awards to Centex and SS Assemblage. Although Centex and SS Assemblage are not Owners and not parties to the JDA, the case that Austin Ranch filed against Centex and SS Assemblage nonetheless would not exist but for the JDA. Therefore, an award of attorney fees is appropriate under A.R.S. § 12-341.01.

¶23  Finding no abuse of discretion, we affirm the attorney fees award to Appellees. Appellees seek attorney fees and costs on appeal pursuant to ARCAP 21 and A.R.S. § 12-341.01. In our discretion, we decline to award attorney fees. However, as the prevailing parties, Appellees are entitled to their costs upon compliance with ARCAP 21.

**CONCLUSION**

¶24  For the above stated reasons, we affirm the trial court's dismissal of Count 4 and the award of attorney fees and costs to Appellees.



Ruth A. Willingham · Clerk of the Court
F I L E D : gsh